1  Micah R. Jacobs (State Bar No. 174630)
   Eric K. Ferraro (State Bar No. 172699)
2  Jeffrey T. Drake (State Bar No. 218436)
   JACOBS & FERRARO, LLP
3  One Embarcadero Center, Suite 1200
   San Francisco, California 94111
4  Telephone: 415-732-3787
   Facsimile: 415-732-3786
5
   Attorneys for Plaintiff
6  Independent Recording Industry Services, Inc.

7

8                     UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         San Francisco Division

11

12                                          **Case No.**

13  INDEPENDENT RECORDING
    INDUSTRY SERVICES, INC.,                **COMPLAINT FOR:**
14
                             Plaintiff,     **(1) DEFAMATION;**
15       v.
                                            **(2) INTENTIONAL INTERFERENCE WITH
16  DON LICHTERMAN; SUNSET                      CONTRACT;**
    RECORDS, INC.; SUNSET HOLDING          **(3) INTENTIONAL INTERFERENCE WITH
17  CO., LLC; and SUNSET RECORDS               PROSPECTIVE ECONOMIC ADVANTAGE;**
    GROUP,
                                            **(4) NEGLIGENT INTERFERENCE WITH
18                                              PROSPECTIVE ECONOMIC ADVANTAGE;
                             Defendants.        AND**
19
                                            **(5) CIVIL CONSPIRACY**
20

21
                                            **Jury Trial Demanded**
22

23

24

25

26

27

28

1   COMES NOW plaintiff Independent Recording Industry Services, Inc. ("Plaintiff")
2   alleging on knowledge with respect to its own actions and otherwise on information and belief as
3   follows:

**The Parties**

5   1.    Plaintiff Independent Recording Industry Services, Inc. ("IRIS") was, and is, a
6   corporation organized under the laws of the State of California, with its principal place of business
7   located in the City and County of San Francisco, California.  IRIS provides digital media distribution
8   and other services to record labels and other content providers.

9   2.    Defendant Sunset Holding Co., LLC was at all relevant times, and is now, a limited
10  liability company organized under the laws of the State of New Jersey, with its principal place of
11  business located in New York City, New York.

12  3.    Defendant Sunset Records, Inc. was at all relevant times, and is now, a corporation
13  organized under the laws of the State of Delaware, with its principal place of business located at
14  New York City, New York.  Plaintiff is informed and believes that Sunset Records, Inc. is a wholly-
15  owned subsidiary of Sunset Holding Co., LLC.

16  4.    Defendant Sunset Records Group was at all relevant times, and is now, a general
17  partnership with its principal place of business located in New York City, New York.  Plaintiff is
18  informed and believes that Sunset Holding Co., LLC and Sunset Records, Inc. are partners in Sunset
19  Records Group and that the citizenship of all its partners is in the State of New York.

20  5.    Defendant Don Lichterman ("Lichterman") is an individual citizen of the State of
21  New York and is the founder and chief executive officer of Sunset Holding Co., LLC, Sunset
22  Records, Inc. and Sunset Records Group.  On information and belief, Lichterman is the sole member
23  of Sunset Holding Co., LLC and the sole shareholder of Sunset Records, Inc.

24  6.    Upon information and belief, at all relevant times, through its ownership of Sunset
25  Records, Inc., Sunset Holding Co., LLC had both the right and the authority to control the actions of
26  said entity.

27
28

JACOBS & FERRARO
ATTORNEYS AT LAW
SAN FRANCISCO

2.

COMPLAINT

1    7.    Upon information and belief, at all relevant times, as a founder and chief executive

2    officer, Lichterman had both the right and the authority to control the actions of Defendants Sunset

3    Holding Co., LLC and Sunset Records, Inc.

4    8.    At all relevant times, each of the Defendants was the agent, servant, employee,

5    partner, joint venturer, representative, subsidiary, parent, affiliate, alter ego, or co-conspirator of the

6    others, had full knowledge of and gave substantial assistance to the alleged activities, and in doing

7    the things alleged, each was acting within the scope of such agency, service, employment,

8    partnership, joint venture, representation, affiliation, or conspiracy, and each is legally responsible

9    for the acts and omissions of the others.

10    9.    Defendants all are doing business in and/or have directed their activities at California,

11    and specifically this judicial district. By way of example, all tortious acts of Defendants alleged

12    herein were directed at individuals and entities located in California and in this judicial district.

13    Further, Defendants advertise, promote, sell, and support customers in California and in this judicial

14    district. In addition, Defendants boast that their group of companies "and its global operation,

15    acquire, develop, and distribute major music recording artists, home visual entertainment products,

16    online-digital entertainment technologies and music and filmed entertainment worldwide."

17    Defendant Sunset Records Group also negotiated and entered into a music distribution agreement

18    with IRIS directly within this judicial district, in which Defendant agreed to the application of

19    California law.

20                                **Jurisdiction and Venue**

21    10.    This action is between citizens of different states and the amount in controversy

22    exceeds $75,000, exclusive of interests and costs. Accordingly, this Court has original subject

23    matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

24    11.    Venue in this district is appropriate, pursuant to 28 U.S.C. § 1391, because Plaintiff

25    resides in this district, a substantial part of the events giving rise to the dispute occurred in this

26    district, a substantial part of the property that is the subject of the action is situated in this district,

27    and the Court has personal jurisdiction over each of the parties as alleged throughout this Complaint.

28

JACOBS & FERRARO
ATTORNEYS AT LAW
SAN FRANCISCO

3.

**COMPLAINT**

**Background Facts**

12.    On or about January 6, 2006, Defendant Sunset Records Group, an independent record label, entered into a Content Distribution Agreement with IRIS for digital distribution of music (the "Agreement").

13.    In early January 2008, a dispute arose between IRIS and Defendants under the Agreement.

14.    On or about January 16, 2008, Defendant Lichterman—in apparent reaction to the contract dispute—commenced a campaign of abuse, harassment, interference and physical intimidation, by sending literally hundreds of emails a day (many of which were near identical copies) to at least six individual officers and employees of IRIS (the "Emails"). In the Emails, Lichterman made offensive and derogatory comments about, and expressly threatened acts of physical violence against, specific IRIS employees. Further, the sheer volume of Emails sent by Lichterman was designed to interfere with and disrupt IRIS's business activities. The Emails included the following statements:

- "I would like to pop you right in the face so your nose just breaks and bleeds all over the place."

- "you are all such fucking losers, you just continue to do things in a very illegal way."

- "You are all a bunch of douches....Even the cunt fat shit-publicity that is now copied on these hundreds of letters."

- "I will keep dedicating my time to send these emails. I'll bet every female in that building is fat and gross just like that publicity cunt face."

- "You want to live with me so bad...you got it fuck heads.....you will hear from me so many times.....This is actually fun....I have never called people faggots and losers and cunts to their faces or in writing and it feels sort of good."

- "I will fuck you up in person."

- "you fag boy...you better work out dude...It would not even matter anyway unless you know more [mixed martial arts] than I know every day. I just cannot wait to meet you in person face to face."

1      • "That is what you will have to live with every day and when you go to [South by

2          Southwest, a music industry trade conference attended by record labels and companies

3          such as IRIS] because as you can see, I am fucking nut when it comes to scum bags in

4          life. This will not stop any time soon."

5      15.    On or about January 17, 2008, Defendant Lichterman sent a newsletter by email on

6  behalf of the Sunset Records Group—and thereby on behalf of all Defendants—directed to third

7  party "artists, producers, label heads, business partners and affiliates" (the "Newsletter"). In the

8  Newsletter, Defendants make the following statements, among others (emphasis added):

9      • "There is a corrupt company that has **hijacked, stolen and is reselling** your

10         copyrights in a an illegal way. They are called IRIS Distribution and they are located

11         in San Francisco. They have control of your copyrights today."

12     • "In doing that with our digital titles, this group of scum bags that have ZERO

13         experiences in the music industry, claims they have a contract with the Sunset

14         Records Group, Inc. which was a Delaware Company. We have that contract which

15         has an incorrect address, incorrect telephone and there is nothing about this current

16         company that is correct on that 2006 agreement."

17     • "They have **literally stolen** and blocked access of your copyrights."

18     • "I would assume this IRIS company will continue to sell your copyrights even though

19         we are dissolving this part of the company."

20     • "These people are not even remotely knowledgeable about this industry and they are

21         awful at their jobs."

22     • "I urge you not only to never use this IRIS Distribution group of idiots and

23         conversely, I would also spread the word to every band to never go near this

24         company. They will NEVER get paid their money by this company. **They steal**

25         **money** from young and up coming music acts and young labels with no care but

26         padding their catalog."

27     • "I have no clue how they got hold of your catalog. I think when the deal changed

28         over last year, they swooped in to make this illegal claim."

1    • "**I will be doing a press release over 13,000 media outlets** making sure the search

2    engines are filled with articles about how this company works **to steal music and**

3    **pirate music**."

4    • "**I will send out a newsletter to our 26,000 plus subscribers** who are all industry

5    people making sure they know that there are company's like this in the industry."

6    **16**.    On or about January 18, 2008, Defendant Sunset Holding Co., LLC caused the a

7    press release (the "Press Release") to be published and disseminated to the general public via

8    Billboard Media Wire, which is syndicated and carried by hundreds of print and electronic media

9    outlets. Relevant portions of the Press Release are set forth below:

10    **Sunset Holding Co. closes the digital only record label, eSunset Records and its**
      **digital distribution company.**

11    In a stunning move this week at the Sunset Holding Co., the parent company shut down

12    its digital only record label, and its digital distribution company. Don Lichterman calls the
      move "drastic" yet "overdue" with the company fielding unnecessary distracting issues
      relating to that digital distribution. ...

13

14    Lichterman says, "The people that have infiltrated the music industry from the computer
      industry are weak people." He then says that people at companies like IRIS Distribution
      "are not music people." ...

15

16    ... "I think about how easy it is to deal with proven successful companies that are in this
      industry compared to trying to deal with amateurs like IRIS Distribution." ...

17    ... Sunset Holding is faced with dealing with IRIS Distribution that has stolen control of
      eSunset's copyrights. "They are a corrupt company that has no way to pay for sales while

18    they pirate music in an illegal way" ...

19    ... Sunset's digital divisions have also introduced the company to people that Lichterman
      calls, "disgusting people like staff people at IRIS." ... "I do not want to feed into this part

20    of the industry" and it is clear today that IRIS Distribution continues to sell these
      copyrights illegally ... .

21    17.    In the Newsletter and the Press Release, Defendants published false statements to a

22    group of third parties and referred to IRIS specifically, using its established trade name and

23    registered trademark.

24    18.    The statements of Defendants in the Newsletter and the Press Release, individually

25    and taken together, falsely accuse IRIS of theft, inculpate IRIS with moral turpitude, and charge IRIS

26    with unfitness and lack of integrity in the performance of its business.

27

28

1    19.    The statements of Defendants in the Newsletter and the Press Release were each
2    knowingly false when made and were designed to harm IRIS's reputation and to injure IRIS in its
3    business and profession.

4
                          **First Claim for Relief**
5                            **(Defamation)**

6    20.    Plaintiff incorporates by reference each of the allegations in the preceding paragraphs
7    of this Complaint as though fully set forth here.

8    21.    As alleged herein, Defendants made false statements concerning IRIS to third
9    persons and/or in a manner that caused publication of the false statements to third persons.

10    22.    Defendants knew that said statements were false and/or made said statements with
11    reckless disregard as to whether they were false. In the alternative, Defendants were negligent in
12    making said statements based on available information.

13    23.    Defendants' false statements were of a nature to deprive IRIS of patronage or trade,
14    or to render it odious and contemptible to those with whom IRIS has had or might reasonably expect
15    to have business dealings.

16    24.    Publication of Defendants' outrageous statements has caused and is continuing to
17    cause specific and irreparable harm to IRIS, including injury to its business reputation.

18    25.    As a direct and proximate result of Defendants' wanton publication of these false
19    statements to third parties, Plaintiff has been generally, specially and consequentially damaged in an
20    amount to be proven at time of trial.

21    26.    The aforementioned conduct of Defendants was willful and malicious and was
22    intended to oppress and cause injury to Plaintiff, and therefore Plaintiff is entitled to an award of
23    exemplary and punitive damages under California Civil Code Section 3294 in an amount to be
24    established at trial.

25
                         **Second Claim For Relief**
26                    **(Intentional Interference with Contract)**

27    27.    Plaintiff incorporates by reference each of the allegations in the preceding paragraphs
28    of this Complaint as though fully set forth here.

JACOBS & FERRARO
ATTORNEYS AT LAW
SAN FRANCISCO                            7.
                                    **COMPLAINT**

1    28.    Plaintiff had valid contracts with its third-party customers which were of significant
2    economic benefit to Plaintiff.

3    29.    Defendants knew of the contracts between Plaintiff and its third-party customers.

4    30.    Defendants intentionally took action, as further described herein, designed to induce a
5    breach or disruption of the contractual relationships between Plaintiff and its customers.

6    31.    Defendants' actions have in fact interfered with and disrupted the contractual
7    relationships between Plaintiff and its customers.

8    32.    As a direct and proximate result of Defendants' interference with Plaintiff's
9    contractual relationships, Plaintiff has been generally, specially and consequentially damaged in an
10   amount to be proven at trial.

11   33.    The aforementioned conduct of Defendants was willful and malicious and was
12   intended to oppress and cause injury to Plaintiff, and therefore Plaintiff is entitled to an award of
13   exemplary and punitive damages under California Civil Code Section 3294 in an amount to be
14   established at trial.

15
16
### Third Claim For Relief
### (Intentional Interference with Prospective Economic Advantage)

17   34.    Plaintiff incorporates by reference each of the allegations in the preceding paragraphs
18   of this Complaint as though fully set forth here.

19   35.    Plaintiff had and, unless irreparably harmed already by the conduct of Defendants,
20   currently has prospective economic advantages in the digital media distribution trade due to its
21   unique products and services.  Plaintiff's business and marketing efforts rely upon the inherently
22   valuable goodwill and name recognition associated with IRIS and its products and services.

23   36.    Defendants' conduct was wrongful by a measure beyond the fact of the interference
24   itself.  Defendants published false and defamatory statements to Plaintiff's customers and
25   prospective customers and threatened Plaintiff's officers and employees with physical violence.

26   37.    Defendants' unlawful, unfair and/or fraudulent business acts or practices alleged
27   herein, unless enjoined by order of this Court, will continue to cause great and irreparable injury to
28   Plaintiff.  Plaintiff has no adequate remedy at law to fully compensate for injuries that it is

1  currently suffering, including the loss of customers, reputation, and goodwill to be suffered from

2  Defendants' unlawful, unfair or fraudulent business acts or practices alleged herein.

3      38.    In publishing the false and defamatory statements regarding Plaintiff and

4  committing the other wrongful acts and omissions alleged in this Complaint, Defendants intended

5  to deprive Plaintiff of valuable commercial relationships and to interfere with, and will continue to

6  interfere with, Plaintiff's prospective economic advantages.

7      39.    As a direct and proximate consequence of Defendants' interference, Plaintiff has lost

8  and will lose, in whole or in part, said prospective economic advantages.

9      40.    As a direct and proximate result of Defendants' interference with Plaintiff's

10  relationships with their customers and all who benefit from the use of the Plaintiff's products and

11  services, Plaintiff has been generally, specially and consequentially damaged in an amount to be

12  proven at time of trial.

13      41.    The aforementioned conduct of Defendants was willful and malicious and was

14  intended to oppress and cause injury to Plaintiff, and therefore Plaintiff is entitled to an award of

15  exemplary and punitive damages under California Civil Code Section 3294 in an amount to be

16  established at trial.

17  **Fourth Claim For Relief**
**(Negligent Interference with Prospective Economic Advantage)**

18

19      42.    Plaintiff incorporates by reference each of the allegations in the preceding paragraphs

of this Complaint as though fully set forth here.

20

21      43.    Plaintiff had and, unless irreparably harmed already by the conduct of Defendants,

currently has prospective economic advantages in the digital media distribution trade due to its

22

23  unique products and services.  Plaintiff's business and marketing efforts rely upon the inherently

valuable goodwill and name recognition associated with IRIS and its products and services.

24

25      44.    Defendants' conduct was wrongful by a measure beyond the fact of the interference

itself.  Defendants published false and defamatory statements to Plaintiff's customers and

26

27  prospective customers.

28

1    45.    Defendants' unlawful, unfair and/or fraudulent business acts or practices alleged

2    herein, unless enjoined by order of this Court, will continue to cause great and irreparable injury to

3    Plaintiff. Plaintiff has no adequate remedy at law to fully compensate for injuries that they are

4    currently suffering, including the loss of customers, reputation, and goodwill to be suffered from

5    Defendants' unlawful, unfair or fraudulent business acts or practices alleged herein.

6    46.    In publishing the false and defamatory statements regarding Plaintiff and

7    committing the other wrongful acts and omissions alleged in this Complaint, Defendants knew or

8    should have known about the economic relationships described above, and knew or should have

9    known that these relationships would be interfered with and disrupted if Defendants failed to act

10   with reasonable care in making the statements to Plaintiff's customers and third parties.

11   47.    As a direct and proximate consequence of Defendants' interference, Plaintiff has lost

12   and will lose, in whole or in part, said prospective economic advantages.

13   48.    As a direct and proximate result of Defendants' interference with Plaintiff's

14   relationships with their customers and all who benefit from the use of the Plaintiff's products and

15   services, Plaintiff has been generally, specially and consequentially damaged in an amount to be

16   proven at time of trial.

17   49.    The aforementioned conduct of Defendants was willful and malicious and was

18   intended to oppress and cause injury to Plaintiff, and therefore Plaintiff is entitled to an award of

19   exemplary and punitive damages under California Civil Code Section 3294 in an amount to be

20   established at trial.

21
### Fifth Claim For Relief
### (Civil Conspiracy)

22   50.    Plaintiff incorporates by reference each of the allegations in the preceding paragraphs

23   of this Complaint as though fully set forth here.

24   51.    Defendants willfully, intentionally, and knowingly agreed and conspired with each

25   other to engage in the alleged wrongful conduct, including Defendants' publication of false and

26   defamatory statements regarding Plaintiff and interference with Plaintiff's business relationships.

27

28

JACOBS & FERRARO
ATTORNEYS AT LAW
SAN FRANCISCO

10.

1    52.    Defendants did the acts alleged pursuant to, and in furtherance of, that agreement

2  and/or furthered the conspiracy by cooperating, encouraging, ratifying, or adopting the acts of the

3  others.

4    53.    As a direct and proximate result of the acts in furtherance of the conspiracy, Plaintiff

5  has suffered injury, damage, loss, and harm, including, but not limited to, loss of profits from sales to

6  current and potential customers of Plaintiff. The wrongful conduct committed pursuant to the

7  conspiracy was a substantial factor in causing this harm.

8    54.    Defendants' intentional agreement to commit, and commission of, these wrongful

9  acts was willful, malicious, oppressive, and in conscious disregard of Plaintiff's rights, and Plaintiff

10  is therefore entitled to an award of punitive damages to punish their wrongful conduct and deter

11  future wrongful conduct.

12

13                                    **PRAYER FOR RELIEF**

14    WHEREFORE, Plaintiff Independent Recording Industry Services, Inc. prays for a

15  preliminary and permanent injunction against each Defendant enjoining their continued

16  Defamation and interference with Plaintiff's prospective business advantages, an assessment

17  against the Defendants of interest, costs and reasonable attorneys' fees incurred by Plaintiff, and

18  such other and further relief as the Court may deem just and proper. Specifically, Plaintiff seeks:

19    1.    a preliminary and permanent injunction against each of the Defendants, their

20    officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns

21    and successors in interest, and those persons in active concert or participation with them,

22    enjoining them from continued acts of defamation and interference with Plaintiff's

23    prospective economic advantage;

24    2.    a judgment holding Defendants liable for compensatory and consequential

25    damages to Plaintiff for defamation in an amount to be proved at trial but which exceeds this

26    Court's jurisdictional minimum;

27

28

1        3.    a judgment holding Defendants liable for compensatory and consequential

2 damages to Plaintiff for intentional interference with prospective economic advantage in an

3 amount to be proved at trial but which exceeds this Court's jurisdictional minimum;

4        4.    a judgment holding Defendants liable for compensatory and consequential

5 damages to Plaintiff for intentional interference with prospective economic advantage in an

6 amount to be proved at trial but which exceeds this Court's jurisdictional minimum;

7        5.    a judgment holding Defendants liable for exemplary and punitive damages in

8 an amount sufficient to make an example of Defendants and deter them and others similarly

9 situated from engaging in similar wrongful conduct in the future; and

10        6.    such other relief as the Court deems just and proper.

12 DATED:   January 18, 2008           JACOBS & FERRARO, LLP

By: _____
Eric K. Ferraro
Attorneys for Plaintiff
INDEPENDENT RECORDING INDUSTRY
SERVICES, INC.

12.

**COMPLAINT**

1

2                              **DEMAND FOR JURY TRIAL**

3

4           Plaintiff Independent Recording Industry Services, Inc. hereby demands a jury trial of this

5    action.

6

7

8

9    DATED:     January /8, 2008              JACOBS & FERRARO, LLP

10

11                                           By: Eric K. Ferraro

12                                           Eric K. Ferraro
                                             Attorneys for Plaintiff
13                                           INDEPENDENT RECORDING INDUSTRY
                                             SERVICES, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JACOBS & FERRARO
ATTORNEYS AT LAW
SAN FRANCISCO                                    13.